Goodrich *v.* Dunbar.

[NEW-YORK GENERAL TERM, May 1, 1854. *Mitchell, Roosevelt* and *Clerke,* Justices.]

———•◦•———

GOODRICH and others *vs.* DUNBAR.

The defendant was consignee and agent of a ship owned by the plaintiffs, at San Francisco. His duties were to take a general charge of the ship, pay all expenses relating to her, sell her and pay the expenses of the sale, and then to account to the plaintiffs, as their debtor, for the balance he might owe them after deducting all payments previously made by him, and the balance due him from the plaintiffs on a former account. *Held,* that the defendant was not liable to arrest, under the 179th section of the code, as a factor, agent or broker, or as having received the plaintiffs' money in a fiduciary capacity.

By the obtaining of a judgment, the original cause of action is merged. Hence, in an action upon a judgment, the defendant is not liable to arrest upon the ground that the judgment was obtained for moneys received by him in a fiduciary capacity.

THIS was an appeal by the defendant from an order made at a special term, denying a motion made by him to vacate an order of arrest.

*H. H. Stuart,* for the appellant.

*Weeks & De Forest,* for the plaintiffs.

*By the Court,* MITCHELL, P. J. The defendant was arrested on an affidavit showing that judgment was recovered against him in California, in July, 1853, for $1008.25 damages and $252.90 costs. That the cause of the recovery was moneys received by the defendant as agent of the plaintiffs; that he was consignee and agent of a ship owned by the plaintiffs at San Francisco, which was sold there, and the defendant as such agent received the proceeds and earnings of the ship. A copy of the judgment was annexed, and it showed the items on which the judgment was founded, amounting together to $3960.75, and that the de-. fendant claimed credit for moneys expended by him as such agent, amounting to $3811.28; and that there was allowed to him $3004.30 of this last sum, and that judgment was given against him for $956.45, and interest and costs. The first item in the defendant's account was allowed to him, and showed a balance of accounts in his favor, by account rendered in December, 1849, of $211.33. Payments had been made by him and were allowed to him for entering the ship, for court fees, lawyers' fees, cash paid the health officer, seamen's wages, money lent to a certain person, money paid the captain's charges for defending a suit against the captain, and giving bonds, &c. From the nature of these credits the duties of the defendant and his relation to the plaintiffs can be understood. He was not a mere agent to sell and remit proceeds. He was to take a general charge of the ship, pay all expenses of every kind connected with her, sell her and pay expenses of the sale, and then to account to the plaintiffs, not for the whole proceeds of sale less his commissions on the sale, but for the balance he might owe them after deducting all payments of any kind before then lawfully made by him, and the balance of account that the plaintiffs had previously

owed him.   The contract made with the defendant was not that
he should hold the moneys to be received by him as a separate
fund belonging to the plaintiffs ; but it was intended that he
should receive the money, pay all expenses and all sums to
which he was entitled, and then to account for the balance to the
plaintiffs as their debtor, on demand.   The code allows the arrest
of any person for money received by any factor, agent, broker or
other person in a fiduciary capacity.   (*Code*, § 179.)   The term
" in a fiduciary capacity" tends to show what is meant by factor,
agent, broker : viz. one in whom a trust is reposed, such as
is usually reposed in those persons in their ordinary or regular
business ; that is, a trust that they will sell and immediately
account for the balance after deducting their commissions : not
that they shall take a general charge of their principal's business,
pay various debts of theirs and assume liabilities for them, and
then sell their property.   In this last case the agency to sell or
collect, which is the only one that the code refers to, was but a
small part of the contract, and the agency to superintend and
pay out for the plaintiffs was the principal part of the defend-
ant's duty in all respects except in amount.   Did not the plain-
tiffs then mean to trust to the defendant as a debtor rather than
as an agent, and to depend on his responsibility ?   If credit was
thus given to him, he would not be within the meaning of the
179th section of the code.

The defendant also insists that after judgment he is not liable
to arrest.   The subdivision of § 179, under which he is arrested,
so far as relates to his case, is that "*in an action* for money re-
ceived by any factor, agent, broker or other person in a fiduciary
capacity," the defendant may be arrested.   The plaintiffs insist
that this is an action for money received by an agent, although
it is founded on the judgment, as the judgment was for money
thus received ; and that they may go behind the judgment and
show its consideration, as it is allowed to the plaintiff, when a
defendant pleads an insolvent discharge to a suit on a judgment
in the state where the discharge was granted, to show that the
original debt was contracted in another state, and that the plaintiff
resided there.   The proper answer was given to this illustration,

Goodrich *v.* Dunbar.

that it is matter only of state regulation whether a judgmen shall merge the remedy on a debt or not, and that the constitution of the United States, which is paramount to any state regulation, forbidding any state to pass any law that may impair the obligation of contracts, equally denies any effect to the state regulation which would indirectly impair the obligation of the original contract by saying that it is merged in the judgment: the state cannot avoid the contract in any way, and therefore cannot by saying it is merged in the judgment. But whenever the state rule is not interfered with by that paramount law, it is paramount; and the law of the state is that a judgment merges the original cause of action. In this case no action can be sustained for money received by the defendant as agent; it can only be sustained on the judgment. If the plaintiffs had accepted a bond alone, or a bond and mortgage, for their debt, they could not have sued for the original cause of action, nor held the defendant to bail. The judgment obtained by them was as much a voluntary act of theirs as the acceptance of a bond would be. They chose to sue the defendant; he did not compel them against their will to bring him into court in California, or to take judgment against him. They have all the advantages of the judgment, and should take it with such inconveniences as necessarily attach to it. The defendant might perhaps (if the whole case were opened to him) show that the items of payment before disallowed to him should be allowed to him, and if he should succeed in this he would nearly discharge the plaintiffs' claim. But he is precluded from doing this, on account of the high character of the evidence of his indebtedness contained in the record of the judgment, and its merger of the original contract; and he should therefore be protected from having that judgment regarded as unimportant, when the question is whether he should be imprisoned or not.

It was said for the plaintiffs that an action may be brought as for goods sold only, and in the complaint no mention need be made of any fraud in contracting the debt, and yet the defendant may be held to bail for such fraud. This is so, and arises from the difference in the language of subdivision 2 from that in sub-

division 4 of section 179. Subdivision 4 is that the defendant may be arrested, who " has been guilty of a fraud in contracting the *debt* or incurring the obligation for which the action is brought ;" showing that the *action* is to be for the debt, or obligation only, but the *arrest* for the fraud in contracting that debt or obligation.

In subdivision 2 the language clearly restricts the right to arrest to certain kinds of *actions*. It is " in *an action* for a fine or penalty, or on a promise to marry, or for money received, or property embezzled or fraudulently misapplied by a public officer, &c. or by any factor, agent, broker," &c. The *action* must be for the fine, penalty, promise to marry, money received, &c., or it does not come within this subdivision. Nor is this the only subdivision in which the right to arrest depends on the nature of the action : subdivisions 1 and 3 are like it in that respect. Subdivision 1 applies to *actions* for the recovery of damages on a cause of action not arising on contract, &c., or when the *action* is for injury to the person, &c. ; and subdivision 3 applies to *actions* to recover the possession of personal property. If judgment were obtained in an action for a fine or penalty, or on a promise to marry, or for a tort, or in an action for the recovery of personal property, and a suit were brought on such judgment, this last suit could not be called an action for a fine, penalty, or promise to marry, or for a tort, &c. ; and so the defendant could not be arrested. Neither can the defendant be lawfully arrested in this case.

The order denying the motion to vacate the order of arrest should be reversed without costs ; the defendant stipulating to bring no action for the arrest.

[NEW-YORK GENERAL TERM, May 1, 1854. *Mitchell, Roosevelt* and *Clerke,* Justices.]