# SUPREME COURT.

### Alonzo Frost and others agt. Henry V. M'Carger.

Where the defendant entered into a written contract with the plaintiffs—who were nurserymen—to receive a lot of fruit-trees from them for the purpose of delivery to different individuals in another state, who had ordered, or contracted to purchase them of plaintiffs, (through the defendant,) and to receive the money in payment on delivery of the trees, and, as collected, to remit the same to the plaintiffs by draft on New-York; and on delivering the trees and receiving the money, the defendant alleged that he had lost the money by theft or accidentally, and no money was paid by defendant to plaintiffs on account of said contract,

*Held*, that the defendant was an *agent* of the plaintiffs in a *fiduciary capacity;* there was a special trust and confidence reposed in him; he had no discretionary powers. He was, therefore, liable to *arrest* for money received as such agent.

On motion to discharge the defendant from arrest, it appeared that the plaintiffs, after alleging in their complaint the facts constituting the agency, and the receipt of the money by the defendant, alleged that he embezzled it. And the issues of fact were raised by the affidavits of the defendant on motion for his discharge, and the complaint and affidavits, on the part of the plaintiffs, in opposition, whether the defendant embezzled the money, as alleged by the plaintiffs, or whether, as he alleged, he lost it, or it was stolen from him under such circumstances as would exonerate him, as such agent, from liability.

*Held*, that the court ought not to try such issues upon affidavits on motion to discharge from arrest. (*The doctrine upon this question of the partial trial of a cause, on motion to discharge from arrest, to the extent laid down in the cases of Hernandez* agt. *Carnobeli,* 10 *How. Pr. R.* 433, *and The Republic of Mexico* agt. *Arrangois,* 11 *id.* 1, *disapproved.*)

When it is established that there is a class of cases in which the defendant may be arrested upon facts *aliunde* the cause of action, it follows that, upon a motion to vacate the order of arrest, the court or judge must pass upon the issue raised by the affidavits. Such issue is outside of the issue raised in the action, and cannot be presented to a jury.

But in those cases where the facts *constituting the cause of action*, and *authorizing the arrest, are the same,* a jury upon the trial of the issues, will pass upon them: and unless there is a very decided preponderance of evidence in favor of the defendant upon the motion to vacate the order of arrest, or unless the facts show clearly that the plaintiff has no cause of action, the court ought not to vacate the order, and thus " put a slur upon the plaintiff's cause, which ought to come down fairly for trial without prejudice."

*It seems*, that our courts might well have held, under the provisions of the Code on this subject, that the principles previously applicable to motions to discharge from bail remained in force, not having been substantially changed.

Under the old practice the defendant could make the motion in all cases, upon the affidavits used in obtaining the order of arrest, or he could use affidavits of his own upon all questions not involving the *merits* of the action—the very questions upon which the jury must pass. In some cases, he was permitted to use affidavits affecting to some extent the merits, disclosing new circumstances not invalidating the plaintiff's prior statement; as that the defendant was privileged from arrest, or had before been holden to bail for the same cause of action, &c.

It is conceded that the practice in reference to bail is changed, or modified in some respects by the Code, but there is nothing in its provisions which requires that the court should grant the motion to discharge from arrest, in all cases, when the evidence, as furnished by the affidavits touching the *cause of action*, preponderates in favor of the defendant.

And although it may be regarded as settled, that the defendant may make affida vits upon the merits of the action, it is not understood to be settled that the court is, in all cases, to consider the evidence and decide simply as it shall *preponderate* upon the question of fact. In many cases the discharge from arrest would defeat the plaintiff entirely, so far as the collection of his demand is concerned, though he might proceed in his action and obtain judgment.

*Genesee Special Term, April,* 1857.

MOTION to vacate an order of arrest.

In December, 1856, the defendant was arrested and held to bail in this action, pursuant to an order made by one of the justices of this court. At the January special term, held in Orleans county, the defendant, upon other affidavits, and the affidavits upon which the order of arrest had been made, moved to vacate the order, and the plaintiffs applied for a continuance of the motion to a future special term, to enable them to procure further affidavits, principally from persons residing in the state of Wisconsin. The application was granted, with leave to both parties to procure and read upon the motion additional affidavits. The motion was heard in April, at the special term then held in Genesee county, and numerous affidavits were read on both sides.

The nature of the action, the character of the affidavits, and the questions raised and discussed, are sufficiently apparent from the following opinion.

JOHN H. MARTINDALE, *for plaintiffs.*
S. E. CHURCH, *for defendant.*

MARVIN, Justice. The plaintiffs are nurserymen, engaged in the business of selling fruit-trees and shrubbery in or near Rochester. The defendant was a young man—his father's family residing in Orleans county, in this state. He spent a portion of the summer and fall of 1856 in the state of Wisconsin, in obtaining orders and contracts for the delivery and sale of trees, and nursery articles. In October he visited the plaintiffs, and made an arrangement with them by which he sold and assigned to them the orders and contracts obtained by him, for the consideration, as expressed in the contract, of the sum of $2,648.43; and he authorized the plaintiffs, through him, to fill the orders and contracts, and to receive the full sum of $2,648.43, with any expenses they should incur in delivering the trees, or in collecting the money therefor. He accepted the agency from the plaintiffs to deliver the trees, and receive for them the pay, until they should receive the aforesaid sum; and he agreed to remit to the plaintiffs, as collected, by drafts on New-York, until the full sum aforesaid should be paid to them, and thereupon the plaintiffs were to assign to him and release all further interest in the orders and contracts. The plaintiffs agreed to perform on their part. The contract was in writing.

The plaintiffs furnished the trees and nursery property, and, upon their arrival in Wisconsin, the defendant delivered them to the respective purchasers, and received the pay therefor. He made no remittances to the plaintiffs. Early in December, the plaintiffs received letters from the defendant, written at Madison, in Wisconsin, informing them that he had delivered the trees and received the money, amounting to $5,800, and had lost all the proceeds of the sales except $280. The allegation of the defendant is, that the money was in a pocket-book, in a side coat-pocket, and that it was stolen from him while in the cars near Madison, or at the depot in Madison, on the 17th day of November, 1856.

The causes of action, as shown in the complaint, may as well be stated here. It will be necessary hereafter to recur to the positions taken by the parties, and to the character of the affidavits.

The plaintiffs, in their first cause of action, allege, substantially, that they appointed and constituted the defendant their agent and servant to deliver the property owned by them to the purchasers, or contractors, in Wisconsin, and to receive the money to be paid therefor. That the defendant accepted the appointment; that the property [trees,&c.] was placed in his hands; that the defendant delivered the property to the contractors and purchasers, and received therefor the sum of $2,648.43, over and above expenses. That the defendant being so possessed of the money belonging to plaintiffs, and being their agent and servant, with intent to embezzle the same, did, on or about the 17th day of November, at Madison, fraudulently, &c., secrete and make way with, and convert to his own use, the money—the property of the plaintiffs, to the amount of $2,648.43, and wholly neglected and refused to produce and pay over to the plaintiffs the money, or any part of it.

The second cause of action is for a conversion of the money.

I shall not attempt to set forth here the substance of the affidavits read upon the motion. There were some thirty of them. They were mostly taken in Wisconsin—both parties having resorted to witnesses there, mainly upon the litigated question, whether the defendant had actually lost any money. Upon this question the evidence adduced by the plaintiffs, as furnished by the affidavits, is entirely circumstantial—consisting of a great variety of facts, tending pretty strongly to produce conviction that no money was lost by the defendant. Some of the facts stated in the affidavits are mere hearsay.

On the part of the defendant, we have his positive affidavit of the loss of the money and of the circumstances, and of his acts and doings in the premises. Also, many affidavits in which facts are stated explanatory of facts and circumstances put forth in the affidavits read on behalf of the plaintiffs, and some affidavits tending to show the loss of the money.

The plaintiffs allege that the defendant was a non-resident of this state; also, that he was about to remove to the state of Missouri, and the affidavits read by the plaintiffs tend to establish these allegations. Those read by the defendant tend to prove the contrary, and that defendant's residence is Orleans county, in this state.

The principal positions taken by defendant's counsel are,

1. That the affidavits, upon which the order of arrest was made, do not show a cause of action for which the defendant was liable to arrest.

2. Assuming that the affidavits first used were *prima facie* sufficient, then taking all the affidavits, as read on this motion, upon the question of embezzlement or conversion, the plaintiffs fail to establish any cause of action : or rather, as a naked question of fact, the weight of evidence is with the defendant; and that the court, upon this motion, must decide upon the cause of action in the same manner it would decide were the cause actually tried by the court, and the same evidence should be produced.

3. As to the residence of the defendant, or his intention to leave the state, the position is the same, viz., that they are questions of fact to be decided by the court, and that the weight of evidence is with the defendant.

The first question arises from the nature of the relations existing between the plaintiffs and defendant, as disclosed by the affidavit of one of the plaintiffs, in which the contract between the parties, as substantially hereinabove stated, is set forth. This written contract was probably drawn by the parties. It is brief, and not very artistic. That the parties intended to create a special agency and trust in the defendant, I have no doubt. The affidavits disclose the nature of the business of the plaintiffs, and the special manner of conducting it by agents. The agents receive the trees and shrubbery, deliver them, or sell and deliver them, receive the pay, and immediately, upon the first opportunity, remit to the plaintiffs.

It appears, from the contract, that the plaintiffs purchased of the defendant all the orders he had taken, and all the contracts

he had made in Wisconsin for trees, &c., and the authority to ful-fil them through the defendant, and to receive the pay therefor to the amount of $2,648.43. The defendant accepts the agency to deliver the trees, &c., and receive for the plaintiffs the pay, until they should receive the amount, $2,648.43, and he, their agent, to remit to the plaintiffs, as collected, by draft on New-York, until the full sum aforesaid should be paid to the plaintiffs, and then the plaintiffs are to re-assign and release all further interest in the orders and contracts to the defendant.

By the Code, § 179, subdivision 1, a defendant may be arrested, for injuring or for wrongfully taking, detaining, or converting property; and, by subdivision 2, for money received or property embezzled, or fraudulently misapplied, by a public officer, and by an attorney, solicitor, or counsellor, or by an officer or agent of a corporation, or banking association, in the course of his employment as such, or by any factor, agent, broker, or other person in a fiduciary capacity.

The defendant was an agent. Was he an agent in a *fiduciary capacity?* I think he was. Special trust and confidence were reposed in him. He received the trees, &c., in trust, to deliver them to those persons who had ordered them, or contracted to purchase them; and he was to receive the money in payment for them, from those persons as collected, and remit the money by draft on New-York. He had no discretionary powers. No power to make contracts, nor to deliver any of the property to any other than those persons who had entered into contracts. He received the trees, &c., in trust and confidence, and the money, when paid to him, in the same character.

In *Burnham* agt. *Casey,* (4 *Sand. S. C. R.* 707,) the defendant received from the plaintiff money to be paid directly to another person; he failed to pay it over, and it was held that he was liable to arrest, on the ground that he received the money in a fiduciary capacity.

In *Stoll* agt. *King,* (8 *How. Pr. R.* 298,) it was held, by HARRIS, Justice, that an agent, employed to collect moneys for his principal, who collected and failed to pay, was liable to arrest; that in such a case the agent assumed a special trust, and acted

in a fiduciary capacity. (*See the learned justice's exposition of the term*, "*fiduciary capacity:*" *see, also, White* agt. *Platt*, 5 *Denio*, 269 ; *Bouv. L. D.; Holbrook* agt. *Homer*, 6 *How.* 86.)

The present case is very different from *Goodrich* agt. *Dunbar*, (17 *Barb.* 644.) The defendant there was much more than an agent in a fiduciary capacity. The learned justice, on page 646, gives us, however, his construction of the Code. He says, the term "in a fiduciary capacity," tends to show what is meant by factor, agent, broker, viz., one in whom trust is reposed. Such as is usually reposed in those persons in their ordinary and regular business : that is, a trust that they will sell and immediately remit the amount, after deducting their commissions. In my opinion, the defendant was an agent acting in a fiduciary capacity ; and if so, he was liable to arrest in an action for money received as such agent in such capacity, upon failing to pay it to the plaintiffs. And I suggest, in case he lost the money, or it was stolen from him under such circumstances as would exonerate him, as such agent, from liability, this would be matter of defence to the action, upon the trial. This view was not taken, however, upon the motion, and the plaintiffs, in their complaint, have gone further. After alleging the facts constituting the agency, and the receipt of the money by the defendant, they allege that he embezzled it ; and much the greater portion of the argument of counsel was devoted to the question, whether the money was actually stolen from the de-defendant :—the defendant's counsel maintaining his proposition as secondly above stated. He insisted that the court should carefully weigh and consider the issues of fact, thus made, and if, in the opinion of the court, the weight of the evidence was in favor of the defendant, then that the order of arrest should be vacated. He cited *Hernandez* agt. *Carnobeli*, (10 *How. Pr. R.* 433,) and *The Republic of Mexico* agt. *Arrangois and others*, (11 *id.* 1,) and *Corwin* agt. *Freeland*, (2 *Seld.* 565.)

It must be admitted that the remarks of the learned justice, in the two cases in *Howard*, countenance the position of the counsel. In 10 *How.* 449, he says, " The Code now permits a partial trial of a cause upon a motion to discharge an arrest."

Again : " The court of appeals has interpreted the Code to ad-
mit of such a partial trial, with the view to vacating the arrest,"
citing *Corwin* agt. *Freeland.* The learned justice then states
the principle, viz., " That the inquiry is to be, whether, upon
the whole case, as presented, a verdict ought to be given by a
jury, or a judgment by a single judge, for the plaintiff or de-
fendant. If the questions are doubtful, then the plaintiff has
not made out his case, and the defendant should be discharged."
He thinks the principle of the Code, in this case, is similar to
the doctrine of a court of equity upon a motion to dissolve an
injunction or discharge a *ne exeat.* The opinion of the same
learned judge is expressed substantially in the same manner in
the case in 11 *How. pp.* 9 *and* 10.

With great respect for the opinion of the learned justice, I
am not able to agree with him, in that class of cases, when the
same facts which constitute the cause of action justify the arrest.
The case in *Selden* is no authority for such position. It may
be said, that that case settled the much litigated question,
whether the facts justifying the arrest should not, in a case like
that, appear in the complaint, as the cause of action, so as to
enable the defendant to put them in issue.

It is provided in the Code, that a defendant may be arrested
when he has been guilty of a fraud in contracting the debt, or
incurring the obligation for which the action is brought, &c.
(§ 179, *sub.* 4.) In those cases, where the action was simply to
recover the debt, and nothing was said in the complaint about
the fraud, or its having been fraudulently contracted, the ques-
tion was, whether, upon an affidavit of the indebtedness, and
showing that the debt was fraudulently contracted, the defend-
ant could be arrested and held to bail. This question was
greatly litigated, and learned judges were divided upon it. The
court of appeals held that the Code authorized the arrest, upon
a proper affidavit showing that the debt was fraudulently con-
tracted, and in an action simply to recover the debt, nothing
being alleged in the complaint touching any fraud.

Now, this decision has not the slightest application, in my
opinion, to the question we are considering. Nor does it justify

Frost and others agt. M'Carger.

the position taken by the learned justice in the cases in the 10th & 11th How. supra. In Corwin agt. Freeland, the question touching the practice upon a motion to vacate an order of arrest was not involved; Judge Watson, in his opinion, discusses the question of practice briefly, and in a general way; and to his remarks, when applied to all those cases in which the facts justifying the arrest are different from, and independent of the facts constituting the cause of action, I certainly have no objection: and such was the case in which he delivered his opinion.

When it is established that there is a class of cases in which the defendant may be arrested upon facts aliunde the cause of action, it follows that, upon a motion to vacate the order of arrest, the court or judge must pass upon the issue raised by the affidavits. Such issue can never be presented to the jury. It is an issue outside the issue raised in the action. There are cases where a defendant may be arrested and held to bail, because he is a non-resident. The question of non-residence is a question having no relation to the action, but to the remedy, and must be tried by the court. And so in a case where the action is for the debt simply, and the defendant has been arrested on an order founded on an affidavit that it was fraudulently contracted. And so in the cases under the 5th subdivision of § 179, relating to the defendant's removing or disposing of his property, or being about to do so, with intent to defraud his creditors. ·

In short, in any case where the facts, justifying the arrest, differ from the facts constituting the cause of action, and are not to be brought before the jury upon the trial, there is an absolute necessity that the court should carefully consider the evidence pro and con, upon a motion to discharge the order of arrest, and decide the disputed question according to the weight of evidence. This necessity does not exist in those cases where the facts constituting the cause of action and authorizing the arrest, are the same.

The facts may and will be tried by a jury when the action is tried, and the verdict, which establishes the cause of action,

will, at the same time, show conclusively that it was a case for arrest. A verdict for the defendant will negative the cause of action and the right to imprison.

It is said, that the Code has changed the practice. What was the practice before the Code, and what change has been effected? The practice of the king's bench and exchequer was to reject supplemental or explanatory depositions to rectify an omission, or to explain an ambiguity in the original affidavit of debt. The English court of common pleas, in case the affidavit to hold to bail was defective, exercised its discretion in reviewing or rejecting supplemental and explanatory affidavits. Allowing them to be read is considered an indulgence and a favor that ought to be very seldom and very sparingly conceded. These rules apply to the plaintiff only, never to the defendant. In the king's bench and exchequer, the defendant was not permitted to use cross or counter-affidavits. This was the general rule. Two or three cases are stated by Petersdorff, which he regards as inconsistent with the general practice. The rule rejecting counter-affidavits only extends to such as attempt to impeach the facts connected with the merits of the cause. The defendant could disclose by counter-affidavits, new circumstances not invalidating the plaintiff's prior statement—as that the defendant was privileged from arrest, or had been before holden to bail for the same cause of action. (*Petersdorff on Bail*, 190–194.)

We have here, briefly, the general practice in the English courts. *Petersdorff* then adds: "As the court of common pleas will, in some cases, admit supplemental and explanatory affidavits, it follows that, under peculiar circumstances, it could not, conveniently with justice to the defendant, reject counter-affidavits negativing the facts disclosed in the first deposition. Conformably with this indulgence, when the right to bail is discretionary with the court, as in actions for torts and other injuries, creating a claim for unliquidated damages, that court, in determining whether an order to obtain special bail shall be granted, will permit a contradictory affidavit to be read on the part of the defendant; but this privilege of using counter-affi-

davits does not appear to extend to cases where the subject-matter in dispute is a debt, and not a tortious injury." (*Id.* 194.) This is the part of *Petersdorff* to which reference is made by the learned judge in *Hernandez* agt. *Carnobeli*, (10 *How.* 449,) with the remark that the Code now permits the partial trial of a cause, upon a motion to discharge an arrest. That the 204th and 205th sections have introduced this new principle in the law of bail, or extended and recognized a rule which, to a limited extent, prevailed in the court of common pleas in England. *Petersdorff* cites two cases, reported in some practice cases, or reports of the common pleas, which I cannot consult, not having the books referred to. But I apprehend it will be found that the cases are special. ,

The rule that the court will not try the *merits of the cause* upon affidavits, runs through all the English cases. The language used is, the merits of the cause shall not be determined on motion ; neither will the court put a slur upon the plaintiff's cause, which ought to come down fairly to trial, without prejudice. (*Salk.* 100 ; *Bac. Ab. Bail in Civil Actions, B.*) The cases, 6 *Dow. & Ryl.* 245 ; *Barn. & Ald.* 904 ; 2 *Chit.* 20, are special cases, but they show the general rules. So the cases in our own court prior to the Code. (*Welch* agt. *Hill*, 2 *J. R.* 100 ; *Watkinson* agt. *Laughton*, 4 *id.* 307 ; *Hart* agt. *Falconer*, 5 *id.* 262 ; *Jordan* agt. *Jordan*, 6 *Wend.* 524.)

It is said that the Code has changed the practice, or introduced a new principle into the law of bail. I concede that the practice is changed, or modified in some respects by the Code ; but I find nothing which requires that the court, upon the motion to vacate the order of arrest, should grant the motion in all cases, when the evidence, as furnished by the affidavits touching the *cause of action*, preponderates in favor of the defendant.

The Code specifies the cases in which the defendant may be arrested and held to bail. (§ 179.)

The defendant may apply, on motion, to vacate the order of arrest, or to reduce the amount of bail. (§ 204.) If the motion be made upon affidavits on the part of the defendant, and not otherwise, the plaintiff may oppose the same by affidavits, or

other proofs, in addition to those on which the order of arrest was made. (§ 205.) The defendant may move to vacate the order of arrest upon the affidavits upon which the order was granted; or he may use affidavits on his part, and then the plaintiff may use additional affidavits, &c. These provisions are general, and, it may be conceded, apply to all questions that may be raised. Hence it is probable that the defendant, upon the motion to vacate the order of arrest, may deny, by affidavit, the debt, or any or all the facts which constitute the cause of action.

The Code certainly says nothing of any distinction between cases in which the cause of action and arrest are the same, and cases where the facts authorizing the order of arrest, are different from, and independent of the facts constituting the cause of action. But does it follow that the court, in considering the facts disclosed by the affidavits upon the motion, shall apply, in both these classes of cases, the same rules? I think not. There is nothing in the Code requiring this. The principles applicable to the two classes of cases are, and always have been entirely different. In one class, the facts are outside the cause of action, and have no necessary connection with it. The jury can never pass upon these facts. The court must, from the nature of the case, decide the question—a question collateral to the cause of action, not affecting the action in the least, but af fecting the plaintiff's remedy. The decision of the court is final. The question can be no further litigated except upon appeal.

In those cases where the facts constituting the cause of action and authorizing the arrest are the same, a jury, upon the trial of the issues will pass upon them; and unless there is a very decided preponderance of evidence in favor of the defendant, upon the motion to vacate the order of arrest, in my opinion, the court ought not to vacate the order, and thus "put a slur upon the plaintiff's cause, which ought to come down fairly for trial, without prejudice."

I am not able myself to perceive any good reason why the courts might not well have held, under these provisions of the

Code, that the principles previously applicable to motions to discharge from bail, remained in force, not having been substantially changed. Under the old practice the defendant could make the motion in all cases, upon the affidavits used in obtaining the order of arrest, or he could use affidavits of his own upon all questions not involving the merits of the action—the very questions upon which the jury must pass. In some cases, as we have seen, he was permitted to use affidavits affecting, to some extent, the merits. But the rule that he could not deny and put in issue the debt sworn to by the plaintiff was steadfastly adhered to. Now, in what case can a defendant be arrested for indebtedness arising upon a contract, unless there is some other fact established?

But I will not pursue these suggestions further, as they are of no great practical importance, provided the proper principles are applied to the evidence produced upon the motion. But I will again remark that, in my opinion, there is nothing in these provisions of the Code inconsistent with the application of the old rules and practice to this motion. The case of *Copeland* agt. *Childs*, (18 *Eng. L. & Eq. R.* 375,) is, in principle, in point. It was decided in 1853.

By a recent statute, the plaintiff, upon showing that he has a good cause of action to the amount of £20 6s. at least, and that the defendant is about to depart the country, may obtain an order of arrest. The statute gives the defendant liberty to apply to a judge, or the court, to be discharged out of custody. The defendant applied to set aside the order of arrest, &c., and proposed, by affidavit, to show that the plaintiff had no cause of action; that he made no promise binding in law, as he was not of age at the time of the promise. COLERIDGE, J., said, he could not enter into the merits of the case. It would be trying a plea of infancy upon the merits. After hearing argument, and adverting to the old practice and the statute, he remarks: "One of these points goes to the foundation of the action; that is, directly to the merits. The other is a matter collateral, namely, whether the defendant is about to quit the country. I quite agree that there is nothing in the words of

the act to show that any distinction is to be made between the two questions; but the judges have held that, as before the act, people were never allowed to deny the truth of the affidavit to hold to bail, because that was matter which went to the merits, and was ultimately to be tried by the jury : so now for the same reason, as to the existence of a debt, or cause of action, the practice is to stand as before, and the affidavit, therefore, is conclusive, subject, however, to its being impeached for matter apparent on the face of it.    The only question which the judge enters into is, whether the party is about to leave the kingdom.    As that point cannot be discussed elsewhere, the parties are heard upon the merits.    On that ground the defendant is allowed to file affidavits, and the plaintiff may file further affidavits.    The courts have never gone beyond that.    If I am now to receive affidavits as to the cause of the action, there might be this inconvenience, I might discharge the defendant on the case made by the affidavits, but the jury might take an entirely different view of the matter, and the result would be that the plea would not be made out, and yet in the meantime the defendant might have left the country.    The practice was uniformly here the other way.    It was founded upon a full consideration of what the law was before, and what would be the most convenient and equitable rule to pursue for the future."

I give this long extract, as it so clearly and fully expresses my own views upon the subject; and I think the provisions of our Code, touching the question under consideration, could well have received the like construction.    But a different view, to a certain extent, in several cases, has been taken.    (*See Falconer* agt. *Ellis*, 1 *Code R. N. S.* 155 ; *Barber* agt. *Hubbard*, 3 *Code R.* 169.)

Although it should perhaps be regarded as settled, that the defendant may make affidavits upon the merits of the action, I do not understand or regard it as settled, that the court is, in all cases, to consider the evidence, and decide simply as it shall *preponderate* upon the question of fact.    One, and perhaps more of the justices, has expressed an opinion in the affirmative.    It is important that the practice under the Code should be settled,

and that it should be uniform throughout the state; hence I have been, and am inclined to concur in the well considered decisions and opinions of my brethren. But, occasionally, it so happens that decisions are made, and opinions are expressed, in which I find it impossible to concur.

Upon the present question, the proposition, that in all cases, the merits of the action may be contested and litigated, upon a motion to vacate the order of arrest, and that the court must decide the disputed question of fact, in the same manner and upon the same principle as though the cause itself was upon trial by the court without a jury, is, to me, somewhat alarming. It is a great innovation upon all our previous practice and notions, and, in my opinion, in practice it will be found to be extremely dangerous and pernicious.

Numerous cases may be put, in which the affidavits of the plaintiff and defendant, touching the cause of action, are in direct conflict, and perhaps, at the time, neither party can produce any further evidence. Is the court to discharge the order of arrest? The plaintiff, in his affidavit, states that defendant met him, and took from him his horse, and rode off. The defendant admits this, or alleges he purchased the horse and paid for him. The horse cannot be found, and the defendant is leaving the state for parts unknown. Am I to discharge him from arrest? The plaintiff, in his affidavit, states that the defendant assaulted and beat him. The defendant positively denies this. No other persons were present. The defendant is a transient person, and on his way out of the state. Am I to discharge him? Again: numerous persons saw the affray, and, as usually happens, differ in their relation of the disputed facts —which struck the first blow: if the plaintiff, then was the defence unreasonable and excessive, so as to make the defendant liable in the action. Am I to hear all the mass of conflicting evidence upon the motion to vacate the order of arrest, weigh and consider it carefully, and decide as though the cause was on trial by me without a jury? Are the parties to be put to this great trouble and expense in this stage of the proceedings? —the decision of the court not resulting in a decision of the

cause, but deciding whether the defendant should be held to bail.

The case now under consideration presents as fair a case as any by which to test the practical application of the principle I am combatting. The plaintiffs allege that the defendant has been guilty of embezzling and converting their money in Wisconsin. He denies it, and alleges a loss of the money. The truth or falsehood of these allegations is to be established on the trial by a great variety of facts and circumstances. Some thirty affidavits have been read upon this motion—most of them taken in Wisconsin, and most of them relating to the question whether the money was stolen from the defendant. Am I to go into a careful analysis and consideration of these affidavits, and ascertain, according to my notion, on which side of the question the evidence preponderates, and pronounce my verdict, in a case quite doubtful, and very difficult—a case peculiar, according to all our notions of evidence and of trial, for a jury: a case which could not be tried by the " court, unless the parties waived a jury trial—with the assent of the court ;" and the court, if the parties should assent, would probably not consent to try it.

When facts are proved, from which the main fact in issue may, by a process of reasoning, be inferred, the question is always one for the determination of which a jury trial is peculiarly adapted. A thousand facts and circumstances are to be weighed and considered, must the court, upon this motion, analyze, arrange and consider minutely, all these facts and circumstances and come, perhaps doubtingly, to a decision upon the precise question which, when the cause shall be tried, is to decide the whole cause ? In many cases the discharge from arrest would defeat the plaintiff entirely, so far as the collection of his demand is concerned, though he may proceed in his action and obtain judgment.

Again : this practice, when it is generally understood, will be extremely onerous and embarrassing to courts, parties and counsel. A large portion of this class of cases will be subjected to a trial before the court, upon a motion to vacate the order of

Frost and others agt. M'Carger.

arrest. In those cases, when it may be of the last importance to the plaintiff that the defendant should be held to bail, he may be driven to collect, in the form of affidavits, the entire evidence which he could produce on the trial. He may be obliged, as in the present case, to visit other states, and produce, upon affidavits, all his evidence. Failing to do so, he may be defeated upon his motion, and the defendant may be set at liberty without bail, and then depart the state, abandoning all defence.

It is said, that if there is no cause of action the defendant ought not to be held under arrest. This is undoubtedly true; but who shall decide whether there is actually a good cause of action against him? and when shall this decision be made? The law, I had supposed, determined this, and that the jury should decide, unless the case, upon investigation, should appear so clear that the court would take it upon itself to decide, by directing the verdict. The law does not, and never has claimed that it is a system so perfect that, in its administration, no injury or inconvenience could result to any one.

It has, however, its remedies, not in all cases adequate to redress all grievances. If the arrest is malicious, the defendant has his remedy as heretofore. He may suffer from the arrest, and yet have no redress. This was always so. In changing the law and the practice as it has heretofore existed, it should always be considered whether we may not introduce much greater injury and inconvenience, than has arisen from the former practice.

In my opinion, and yielding a proper respect to the decisions which have been made under the Code, the court should not, in the class of cases we are considering, vacate the order of arrest, unless the facts show clearly that the plaintiff has no cause of action. If the affidavits raise a fair question for the jury, upon the merits of the action, the court should not interfere. Such has been the law, and such I understand it still to be; and there has been no serious complaint, or cause of complaint of the law, as it has been in this respect heretofore administered.

If the defendant succeeds upon the trial, he and his bail are

of course discharged. If the plaintiff succeeds, his remedy against the defendant is preserved. Beyond the rule here suggested I am not prepared to go. As already intimated, I should have been content with such a construction of these provisions of the Code as would have excluded counter-affidavits upon the merits of the action, except in those few cases, and under the restricted circumstances in which they were previously admitted, adopting the view taken by COLERIDGE, upon the English statute, in *Copeland* agt. *Child.*

When the question upon which the right to arrest and hold to bail is distinct from the facts constituting the cause of action, and collateral to the cause of action, the court must decide the question simply upon the preponderance of the evidence. Such question can never be submitted to the jury.

It has been suggested that the principles of the Code upon these motions are similar to the doctrine of a court of equity upon a motion to dissolve an injunction or discharge a *ne exeat,* &c.. I have already written quite too voluminously in this case. My apology is, that the question is one of great practical importance. I will however remark, that I do not see the similarity, or that the cases are analogous. Courts of equity acted without a jury, and decided disputed questions of fact.

Again : an injunction often affected most seriously the rights of a defendant, during the pendency of the suit, to the enjoyment of property in his possession, and apparently his. The suit in equity generally related to property, and the injunction related to property.

In an action at law for the recovery of damages, nothing can be taken from the defendant till judgment is recovered against him. Neither his property nor any of his rights to property can be affected during the pendency of the action. In the action at law, it appearing in the manner provided by the law, that the defendant has wronged the plaintiff, and that it is a case in which, if the plaintiff recovers judgment, he is entitled, as a part of his remedy, to imprison the defendant, the defendant is bound to furnish sureties for his personal presence, so that the plaintiff may have the remedy provided by the law for the col-

lection of his judgment. In the meantime he is not affected in his property or its enjoyment in the least; and upon giving bail, not usually in practice, attended with any serious difficulty, his person is at liberty. , I will not pursue the subject.

Having come to the conclusion that the questions of fact, so much litigated upon this motion, are questions involving the merits of the action, and that they are peculiarly proper for the jury, I decline to express any further opinion upon them, and deny the motion.

It will not be necessary to pass upon the question as to the residence of the defendant, or his intention to remain from the state. If the decision of the motion depended upon these questions, I should feel called upon to decide them, inasmuch as they are questions not involved in the cause of action.

The motion to vacate the order of arrest is denied, with ten dollars costs.