## UNION BANK a. MOTT.

*Supreme Court, First District ; Special Term, April,* 1858.

MOTION TO DISCHARGE FROM ARREST.—BAIL.

On a motion to vacate or modify a provisional remedy—*e. g.* to vacate an order of arrest or reduce the amount of bail—the question is, whether upon the whole case, as made by the affidavits on both sides, the court, if called upon to act on the application as *res nova*, would grant the order.

The defendant kept an account in the bank of the plaintiffs, and during a certain number of years drew out, to a very large amount, more than had been deposited by him ; and on examining the ledger containing the account of the defendant with the bank, which was kept by a clerk, one B., it appeared that in the ledger the deposits of the defendant had been increased by false entries to the amount overdrawn by the defendant :—

*Held,* that this was sufficient evidence of the defendant's knowledge of and complicity in the fraudulent entries made by B. ; and that further, the declarations of B., in relation to the fraud, as testified to by his wife, were evidence against the defendant.

It is well settled that the facts which authorize an arrest need not be set forth in the complaint, except where they are facts constituting the cause of action.

The fact that, subsequent to the granting of an order of arrest, the form of the summons in the action was amended, changing it from a summons for a money demand to a summons for specific relief, does not impair the effect of the order, nor afford ground for vacating the order.

Where the defendant has been held to bail in a civil action, and his motion to reduce the bail has been denied by the justice who granted the order and fixed the amount, another justice, before whom a motion to vacate the order or reduce the bail is made, founded upon new affidavits, should not reduce the bail unless new facts are presented bearing on that question; and the fact that, since the denial of the first motion, the defendant has been held to bail in a much smaller amount in criminal proceedings on the same facts, is not a reason for a reduction in the civil action.

Order to show cause why order of arrest should not be vacated, or the amount of bail reduced.

The action was brought by the Union Bank of the city of New York against Jacob H. Mott and Garret S. Mott, to recover alleged over-drafts in a large amount. The action was commenced by the service of a summons on the defendant Jacob, and his arrest. He was held to bail in the sum of one hundred and forty-two thousand dollars, and in default of bail was committed to jail.

The order of arrest was founded on the affidavit of one Arthur, the plaintiffs' cashier, which stated that the plaintiffs were a corporation: that the defendants, and each of them, were justly indebted to the plaintiffs in the sum of $141,586.78, besides interest, for moneys fraudulently overdrawn by them from the plaintiffs: that deponent believed and charged that defendants, and each of them, had been guilty of a fraud in overdrawing, and thus obtaining said money from the plaintiffs: that the fraud was first discovered by plaintiffs on the 9th of March, 1858: that the facts showing such fraud were substantially as follows:—The defendant Garret in 1855 gave a power of attorney to the defendant Jacob, and by means of checks, drawn by Jacob as attorney for Garret, and by collusion with one Brotherson, who was plaintiffs' book-keeper, the defendants obtained from plaintiffs, by over-drafts, moneys amounting to the sum claimed.

The defendant Jacob was arrested on the 11th of March; on the 12th he appeared in the action by his attorneys, and demanded a copy of the complaint.

The original summons contained a notice, under the first sub-division of section 129 of the Code,—*i. e.*, that the plaintiffs would take judgment for a sum specified. Subsequent to the arrest, the plaintiffs obtained an order amending the summons, by striking out that notice and substituting the notice required by the second subdivision of section 129,—*i. e.*, that the plaintiffs would apply to the court for the relief demanded.

About the same time with the arrest of the defendant, the plaintiffs instituted criminal proceedings against him before the recorder of the city of New York, upon the same facts; and in the subsequent course of those proceedings, Arthur, the cashier, was examined as a witness, and testified, among other things, that all he knew in the matter he had derived from information from others. His testimony did not, however, disclose the names of those from whom he had derived information.

In those proceedings the recorder held the defendant to bail in the sum of ten thousand dollars.

On an affidavit setting forth these facts, and denying fully the matters alleged in the affidavit of Arthur, and denying any complicity whatever in any scheme of defrauding plaintiffs, or any acquaintance with Brotherson, other than as a clerk in the bank, the defendant obtained an order that the plaintiffs show cause why an order should not be granted upon the merits of the action, either vacating the order of arrest, or reducing the amount of bail.*

In opposition to this motion, the plaintiffs read an affidavit made by Arthur, subsequent to his testimony before the recorder, alleging in positive terms, and not on information and belief, the truth of the original affidavit; also affidavits of the paying and receiving tellers, and of a clerk, of the plaintiffs, tending to fortify its statements, and also an affidavit by the wife of Brotherson, the teller, in collusion with whom it was alleged that the defendant had acted, and who had absconded on the discovery of the fraud.

---

* The defendant had previously made a similar motion, founded upon the original affidavit on which the order of arrest was granted. That motion was denied by Mr. Justice Clerke, before whom it was heard, and his decision was affirmed at general term in May, 1858.

*Ga Nun, Jordan, & Bain,* and *J. Graham,* and *E. W. Stoughton,* for the motion.

*John Foot* and *S. A. Foot,* opposed.

DAVIES, J.—The new matter presented on this motion is founded on the affidavit of the defendant, the examination before the recorder, and the rebutting affidavits on the part of the plaintiff, and the change which has taken place in the form of the summons since the original order was granted. The examination of Arthur, who made the affidavits upon which the defendant was originally arrested, shows certainly that the matters stated in that affidavit, though affirmed to positively, were derived from others. It is necessary to state the source of information, when matters are stated to be on information; and the original affidavit, and the examination before the recorder, taken together, with nothing else to explain or justify them, would subject it to the just criticism of Mr. Justice Mitchell in Moore *v.* Calvert (9 *How. Pr. R.,* 474). And if the case stood before me alone on that affidavit and examination, I should feel it my duty to discharge the defendant.

But, as I understand the subsequent affidavit of Mr. Arthur, he swears positively, and of his own knowledge, to the payment, by him or one of his assistants, to the defendant of the moneys drawn from the plaintiffs, from January 1, 1849, to February 1, 1853, and to the amount of the indebtedness of defendant to the plaintiff, as stated in his original affidavit. But the question now before me is, whether, upon the whole case, the defendant should be held to bail. In other words, should an order of arrest now be granted upon the facts as now presented? This point is well and clearly stated by Harris, Justice, in Chapin *a.* Seeley (13 *How. Pr. R.,* 490). At page 493 he says: "As I understand the provisions of sections 204 and 205 of the Code, the question, upon every motion like this, is, whether upon the whole case, as made by the affidavits on both sides, the court, if called upon to act upon the application as *res nova,* would grant the order of arrest. If it would, then the motion to vacate should be denied. But if, after hearing both parties upon the question, it should appear that a case for arrest had not been

made out, the order should be vacated."* He cites Hernandez a. Carnobeli (10 *How. Pr. R.*, 449); The Republic of Mexico a. Arrangois (11 *How. Pr. R.*, 9, and cases there cited); Cady, President, &c., a. Edmonds (12 *How. Pr. R.*, 197).

* BEDELL a. STURTA (New York Superior Court, Special Term, December, 1857) was a motion to vacate an order of arrest. The order was granted in the action on the 10th of October. On the 12th of December, the defendant put in an amended answer. The motion was founded on affidavits tending to disprove any cause of action, and in opposition to the motion additional affidavits were put in fortifying the one on which the order was granted. On the argument it appeared that the original summons in the action was entitled as in the Supreme Court, but the copy summons served was not produced, nor did it appear how that was entitled; and the notice of the present motion did not point out any irregularity in this respect.

BOSWORTH, J., *held*, that as the cause of action was one which would authorize an execution against the body, in case of a recovery, the order would not be vacated merely because the cause of action was denied, while the opposing affidavits sustained that on which the order was granted. The complaint should not be set aside after an answer put in, merely because the summons was irregular. If the order of arrest was not wholly void, it should not be set aside for such irregularity on a motion made after answer. If wholly void, the defendant did not need the interposition of the court. Motion denied, with costs, to abide the event.

In CHITTENDEN a. HUBBELL (Supreme Court, First District, Special Term, 1858), the defendant Hubbell was arrested on affidavits showing that the debt, to recover which the action was brought, was fraudulently contracted. On his own affidavit, denying the facts alleged by plaintiffs, the defendant moved to vacate the order of arrest.

INGRAHAM, J., *held*, that the mere denial by the defendant, in his own affidavit, of the facts on which the order was granted, does not furnish any preponderance of evidence in his favor to entitle him to a discharge; and if on such a motion an affidavit merely denying the plaintiff's allegations can be received, it should be sustained by other proof to throw the weight of the evidence in his favor.

ANONYMOUS (New York Common Pleas, Special Term, April, 1858). The plaintiff sued to recover the value of certain property, which he alleged was procured from him by the defendants upon false and fraudulent representations made by them respecting their capital and business.

Upon the affidavit of one Towers, a broker, and through whose agency the defendants obtained the property, showing that he acted for them, that he was authorized by the defendant W. to make the representations referred to on behalf of the defendants' firm of H. A. W. & Co., that he made them as their agent, upon them obtained from the plaintiff the property referred to, and that the representations are untrue; and also, on the plaintiff's affidavit to the effect that the property was parted with and delivered to the defendants' firm of H. A. W. & Co. upon the faith of these representations, and that its return had been demanded and refused; an order for the arrest of the defendants was granted.

What are the facts as now presented by the affidavits? That the defendant kept an account in the Union Bank from January 1, 1849, to February 1, 1853, in the name of Garret S. Mott, his brother, and that the moneys, during that time, were drawn

---

The defendants, upon affidavits denying that they ever authorized Towers to make the representations referred to, now moved to vacate the order ; and the defendant M. especially asked to be discharged from arrest, upon the ground that he had no knowledge of any such representations having been made by his partner, and that he was in no way connected with the fraud alleged, except as a member of defendants' firm.

HILTON, J.—As it is claimed by the defendants that the property was purchased for their firm in the ordinary course of the business and transactions of the partnership, it follows, that if any fraud was practised by either defendant, whereby the plaintiffs were induced to part with their property, both the partners are liable in this action to the same extent as if each had participated in the fraud complained of.

By the act of copartnership, each partner declares to the world that he is satisfied with the honesty and integrity of his partner, and assumes a responsibility for all that he shall do within the scope of the partnership business and concerns. And this responsibility extends to the frauds of a copartner in any partnership transaction,—upon the principle that if, by the wrongful acts of any one, a loss ensues, and one of two innocent parties must suffer, the law imposes the liability upon that party who was the cause of trust and confidence being reposed in the wrong-doer. (*Coll. on Partn.*, §§ 454, 455 ; *Story on Partn.*, § 108 ; Rapp *v.* Latham, 2 *Barnw & Ald.*,795 ; Hume *v.* Holland, *Ryan & M.*, 371 ; Boardman *v.* Gore, 15 *Mass.*, 331 ; Hawkins *v.* Appleby, 2 *Sandf.*, 421.)

In an action of this nature, when the facts constituting the cause of action, and authorizing the granting of the order of arrest, are the same, the court will not, upon a motion to discharge the order, decide the disputed question, and substantially determine the issues between the parties and the merits of the cause in favor of the defendant, simply because the facts furnished by the affidavits preponderate in his favor, unless they do so to such an extent as to produce the belief that the cause of action alleged is wholly groundless. (Welch *v.* Hill, 2 *Johns.*, 100 ; Watkinson *v.* Laughton, 4 *Ib.*, 307 ; Hart *v.* Falconer, 5 *Ib.*, 362 ; Jordan *v.* Jordan, 6 *Wend.*, 524 ; Falconer *v.* Elias, 1 *Code R.*, N. S., 155 ; Geller *v.* Seixas, 4 *Abbotts' Pr. R.*, 103 ; Corwin *v.* Freeland, 2 *Seld.*, 560 ; Frost *v.* McCarger, 14 *How. Pr. R.*, 131.)

But when, as in this case, it appears that the action is prosecuted in good faith by responsible parties, and the affidavits simply negative each other, it is the uniform rule to deny the motion, and permit the action to go to trial before a jury, unprejudiced by any decision affecting the merits of the controversy.

There is no good reason why this salutary rule should be departed from in this case ; and the motion to vacate the order of arrest is denied.

BARRON *a.* SANFORD (Supreme Court, Seventh District, Special Term, June, 1857). The defendant in this action was arrested on the plaintiff's affidavits, showing that the debt was fraudulently contracted. The defendant, on affidavit denying the fraud, moved that the order of arrest be vacated. The motion was opposed on affidavits by the plaintiffs reasserting the facts alleged in the original affidavit.

out by the defendant on checks made by him, as attorney of Garret S. Mott. That, for the period aforesaid, there was drawn out, on such checks, $97,254.90 more than was deposited, and than was entered in the deposit-book by the receiving teller

E. DARWIN SMITH, J.—The affidavits of the plaintiff and defendant are conflicting, and equally positive in regard to the fraud ; the plaintiff positively affirming the fraudulent representations, and the defendant denying the same with equal positiveness. Assuming that the plaintiff states his cause of action positively, and shows a good cause of action *prima facie*, as in the case here, the court does not entertain or determine any issue on that question on these motions. But sections 204 and 205 of the Code give the defendant who has been arrested the right to apply to vacate the order of arrest upon the affidavits on which the order was made, with or without other affidavits. When the motion is made upon affidavits other than those upon which the order was granted, the plaintiff may oppose the motion with new affidavits.

This motion is made and opposed upon new affidavits, and the chief question for the court is, to determine upon what rule or principle the motion must be governed in its decision. If the question is to be decided upon these affidavits upon the rule laid down in Chapin *a.* Seeley (13 *How. Pr. R.*, 490), as if the case were *res nova*, or as ordinary special motions are decided, upon the face and weight of the affidavits, this motion, if it be regarded as a motion on behalf of the plaintiff for bail, should be denied, for the defendant positively denies the affirmative allegations of the plaintiff's affidavits. If, on the other hand, the plaintiff having made out a *prima facie* case for an arrest, and having obtained the order of arrest, the defendant is to be regarded as the moving party, then the motion should be denied, for the allegations of the moving papers are positively negative, and the affirmative allegations of the plaintiff's original affidavits positively reasserted.

The rule as stated by Judge Harris, in Chapin *a.* Seeley (*supra*), is doubtless the true one, when it can be applied clearly by the court ; that is to say, if the judge, upon the whole case, is fully satisfied that a fraud has been committed by the defendant in contracting the debt for which the action is brought, he should of course retain the order, and deny the motion ; so, on the other hand, if he is clearly satisfied that no fraud has been committed, and no cause of arrest established, he should discharge the order.

But what shall the judge do in case of doubt ? Judge Hoffman, in Hernandez *a.* Carnobeli (10 *How. Pr. R.*, 449), considers that "if the question is doubtful, then the plaintiff has not made out his case, and the defendant should be discharged."

I cannot see why this is not the true rule, if the whole question is to be considered raised on the motion as *res nova*; for the party seeking the benefit of bail, like all other cases where the party seeks affirmative relief, holds the affirmative, and should make out his case. And yet I am not quite satisfied that it is safe or proper to dispose of these motions upon this ground. While the liberty of the citizen should not be invaded, or bail required, except in clear cases under the statute, yet this right of arrest is so important in many cases, and the temptations are so strong to make false affidavits to escape it, as well as to procure the order of arrest, that I think the court ought not to dispose of this class of motions upon a simple denial of the grounds upon which the arrest is ordered, and where

who received the deposits, and who testified that all the deposits received were so entered.   On examining the ledger containing the accounts of the defendant with the bank, kept by Brotherson, it appears that in the ledger the deposits of the defendant were increased by false entries to the amount thus overdrawn by the defendant.   The statement of these facts leads to the inevitable conclusion of the complicity of the defendant with Brotherson, in reference to these entries, and his knowledge that the deposits made by him had been fraudulently increased.

On the 4th of October, 1856, the defendant opened an account in his own name in the bank, and from that time to March 10, 1858, he drew out of the bank, and there was paid to him on his own checks, the sum of $44,331.88 more than he deposited. The deposits then increased to this sum by false and fraudulent entries made in the ledger by Brotherson, and it is impossible to doubt that the defendant had knowledge of such fraudulent increase.

If any doubt could exist as to such knowledge, from the acts of the defendant, and which are clearly established, it is dispelled by the affidavit of Mrs. Brotherson.   She shows, in contradiction of the statement made by the defendant, that he and Brotherson were on terms of considerable intimacy, and had business connections incompatible with the acquaintance which the defendant says he had with him.   I arrive at these conclusions irrespective of the declaration of Brotherson, as testified to by his wife.   It was objected to, on the argument, that I should exclude the declaration from consideration.   But the

there is a distinct conflict in the affidavits, in the summary manner in which ordinary special motions are disposed of.

Where there is such conflict in the affidavits, some one must of course have stated facts in dispute untruly ; and I cannot think it is safe or best to let a defendant escape, because, if the case be so, he has sworn falsely in the moving affidavits.   If the plaintiff has sworn falsely, he ought of course to lose his bail, and be made to pay the costs of an investigation.   In such case, I think it will be safest and best, and subserve the rights of suitors and public justice, to refer the affidavits to a referee, and require the parties to submit to an oral cross-examination in respect to the facts stated in the affidavits, with leave to either party to call and examine other witnesses on the question, that the court may ascertain the truth.

I shall in this case so order, that the referee will report the evidence and his finding thereon, whether the debt for which this action was brought was or was not fraudulently contracted ; and the final decision of this motion may stand over till the coming in of such report.

rule is well settled, that when the foundation is laid by proof sufficient, *prima facie*, to establish the fact of a conspiracy to do an unlawful act, between parties, the acts and declarations of each of the parties in reference to the former object, in pursuance of the original concerted plan, are, in contemplation of law, the acts and declarations of them all, and are therefore original evidence against each of them. (1 *Greenl. on Ev.*, § 111.) And the same author says that any one who does enter into a common purpose or design, is in law a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any of the others in furtherance of such purpose or design.

Applying these principles to this case, it is apparent that the defendant is a party to the acts of Brotherson, and that his acts and declarations may be used against the defendants.

Mrs. Brotherson says that Brotherson frequently told her that he was well acquainted with the defendant, Mott, and had had business transactions with him, in regard to Mott's business with the Union Bank; that Brotherson told her that he had got into a very serious difficulty at the Union Bank, owing to said Mott, and that said Mott had promised to extricate him when his mother should die, and he should come into property by that means. That he also told her that Mott had received all the money from the Union Bank, and that he was merely a tool in Mott's hands, and that Mott alone would help him out of the difficulty.

With these facts before me, I cannot doubt if the application had been made for an order of court, it would be my duty to grant it. And such being the state of the case, it is equally my duty, on the authority of Chapin *a.* Seeley (*supra*), to refuse to vacate the order already granted.

But it is contended that, the form of the summons having been changed, the order of court falls, as no order can be granted in the present form of action. I do not understand the question, whether or not the defendant is liable to arrest, to depend at all on the form of the action, or upon the facts appearing in the record. Nay, it is now well settled that the facts to authorize the arrest should not appear in the record.

In Cheney *v.* Sackett (5 *How. Pr. R.*, 467), referring to subdivisions 4 and 5 of section 179 of the Code, the court says:

" There is no provision requiring the complaint to contain allegations which authorize the defendant's arrest or imprisonment. By section 183, the order for the arrest may be made at any time before judgment." * * * The learned judge, in that case, considered that the Legislature did not contemplate any different form of the complaint between bailable and non-bailable actions, and that in most cases, where the defendant may be arrested under section 179, the ground of arrest is something wholly aside from, and independent of, the form of action. In Field *a.* Morse (9 *How. Pr. R.*, 47), the same judge held that allegations, and statements in the complaint tending to them, show that the debt was fraudulently contracted, and constituted no part of the cause of action, and should be stricken out as irrelevant and redundant. He adds that " the doctrine of the case of Cheney *a.* Lenbath (5 *How. Pr. R.*, 467) has been, since the decision of that case, distinctly recognized and approved in the Court of Appeals." The case referred to is doubtless that of Corwin *a.* Freeland (2 *Seld.*, 560). There the Court of Appeals say that an examination of the different sections of the Code will satisfy any one that the Legislature never intended to oblige the party alleging the fraud to embrace it in his complaint. In the first place, the order to arrest cannot be procured upon the pleadings, no matter how broadly the fraud may be alleged in them, but must be on affidavits showing that a cause of action exists, and that the cause is one of those mentioned in section 179. The order to arrest may be made at any time after the summons, before judgment. These provisions show clearly that the order to hold to bail was intended to be independent of the pleadings; and although such orders may, in some instances, be founded on the same facts which constitute the cause of action, in others they may rest upon facts totally distinct from the cause of action, and in all cases the facts must appear by affidavits before any order of arrest can be made. By subdivision 4 of section 179 of the Code, in any action, when it appears, as it must, by affidavit, and independent entirely of every thing in the summons or complaint, that the defendant has been guilty of a fraud in contracting the debt, or incurring the obligation for which the action is brought, he may be arrested and held to bail. In Goodrich *a.* Dunbar (17 *Barb.*, 644), this court held that, under subdivision 4 of this section, the defendant may

be arrested for the fraud in contracting the debt, or incurring the obligation for which the action is brought. And in Wanzer *a.* De Baun (1 *E. D. Smith, C. P. R.*, 261), the summons was for relief, the action being commenced on a judgment recovered in another State. The question was, whether the defendant could be held to bail on affidavits showing fraud in contracting the original debt, for which the judgment had been obtained. Woodruff, Justice, in delivering the opinion of the court, says : "The statute has abrogated the right to hold to bail in certain cases, but not when the debt was fraudulently contracted. It results, I think, that when a debt is fraudulently contracted, the right to hold to bail remains to the plaintiff, whatever may be the form of his action, and through whatever change his security may pass, until his debt is satisfied or discharged." It being apparent to my mind, from the facts before me, that the defendant has been guilty of a fraud in contracting the debt, or incurring the obligation for which this action is brought, it follows that it is a proper case to hold him to bail, whatever may be the form of the summons, or the allegations of the complaint.

The only question remaining to be considered is that of the reduction of the amount of bail. As that has been passed upon by one of the justices of this court and refused, I ought not to review that decision unless new facts are presented bearing on that question. The only one is, that after an examination by the recorder, the presiding judge in our criminal courts, he has adjudged that the defendant, *prima facie*, has been guilty of the fraud charged, and has held him to bail in the sum of $10,000 to answer the criminal charge. This investigation and decision afford strong additional evidence of the truth of the plaintiffs' charge of fraud against the defendant, and furnishes an additional reason for holding him to bail. I do not see that the fact of his being held to bail for the criminal charge, furnishes any reason for reducing the bail the judge who first granted the order thought proper to fix, and, on argument, deemed it right to retain. The facts and amount of bail, in this court, were considerations proper to be urged before the recorder in fixing the amount of bail then, and doubtless had an influence on his mind in determining the amount in which he held the defendant. I do not see that they are sufficient to war-

rant me in interfering with the bail as fixed by the judge who granted the order of arrest.

The motion to discharge the order of arrest, and to reduce the amount of bail, is denied, with costs.