## McBUTT *a.* HIRSCH.

*New York Common Pleas; Special Term, May,* 1857.

ACTION ON JUDGMENT.—ASSIGNEE.—ARREST.—SUPPLEMENTARY PROCEEDINGS.—FRAUDULENT DISPOSAL OF PROPERTY.

Section 71 of the Code,—providing that no action shall be brought upon a judgment, &c., *between the same parties,* without leave of the court,—does not prohibit a *bona fide* assignee of a judgment from bringing an action upon it without first obtaining leave of the court.

The case of Tuffts *a.* Braisted (1 *Ante,* 83), to the same effect—approved.

The recovery of a judgment in one of the courts of this State upon a debt fraudulently contracted, merges the original cause of action; and in an action upon such judgment the defendant is not liable to arrest on the ground of the fraud in the original debt.

That the judgment was recovered in a court without power to order the arrest of defendant, makes no difference.

The examination of a judgment debtor disclosing grounds for arrest,—*e. g.,* a disposal of property with intent to defraud creditors,—may be used as the basis of an application for an order of arrest.

What circumstances amount to a disposal of property with intent to defraud creditors.

Motion to vacate an order of arrest.

This action was brought by Robert McButt, James H. Black, and Alexander Guild, against Adolph Hirsch and Simon Levinger. The grounds on which the present motion was based appear in the opinion.

BRADY, J.—Thomas J. Humphrey, being the holder of a note for $378.90, made by the defendants jointly, on January 23, 1857, commenced an action thereon against them in the Marine Court of this city, and on the 27th of the same month recovered judgment against them for the amount thereof, with costs. On the 14th of March following he assigned such judgment to the plaintiffs, who on the 17th of the same month commenced this action thereupon, without having obtained leave from this court for that purpose. It appears also that the defendants made an assignment for the benefit of their creditors on January 19, 1857, and prior to the commencement of the action in the Marine Court. On April 24, 1857, the plaintiffs obtained an order of arrest against the defendants, founded upon the examination of the defendant Hirsch, on proceedings supplementary to the judgment in the Marine Court, and by which it is insisted that the fraudulent conduct of the defendants in contracting the original debt, and in fraudulently disposing of their property, conclusively appears. The defendants ask for the discharge of the order of arrest upon the following grounds :

1. Because the action was improperly brought; inasmuch as leave of the court was not obtained to bring it, as required by section 71 of the Code.

2. Because, if the action was properly brought, there is no evidence that the debt was fraudulently contracted; and if it had been, the plaintiffs are concluded as to the right to arrest by the judgment of the Marine Court, which absorbed all prior remedies of a provisional character.

3. Because the only evidence of fraud of any kind presented in the moving papers, is contained in the examination of the debtor Hirsch, which could not be used against him to procure his arrest; section 292 of the Code containing a clause forbidding it to be used for any such purpose.

4. Because even if the examination can be used against the defendants, it does not show that since the commencement of the action in the Marine Court, or at any time afterwards, the defend-

ants disposed of their property with intent to defraud their creditors.

The Superior Court have decided, in Tuffts *v.* Braisted (1 *Abbotts' Pr. R.*, 84), at general term, that section 71 of the Code does not prohibit a *bona fide* assignee of a judgment from bringing an action upon it, without first obtaining leave of the court, and upon the ground that the action is not between the same parties. The reasons assigned by that court for the position assumed are conclusive ; and on the authority of that case I consider the first point untenable.

The right to arrest is a provisional remedy (*Code, tit.* 7, *ch.* 1); and the order may be made to accompany the summons, or at any time afterwards, *before judgment* (*Ib.*, § 183). In Wanzer *v.* De Baun (1 *E. D. Smith*, 261), it was decided that the recovery of judgment in *another State* for goods sold, is no bar to an action for deceit in procuring credit on such sale, or for fraudulent representations made to induce the vendor to sell the goods ; and in Field *v.* Morse (17 *Barb.*, 644), the reverse is intimated. Whether the doctrine of Wanzer *v.* De Baun be correct or not, the judgment when recovered in this State quiets all questions in reference to the subject-matter, and the remedies applicable thereto. The judgment is conclusive, and the creditor's further remedies are upon it alone. He should not be permitted to revive or revert to the original cause of action, incidentally or otherwise, in an action upon his judgment, for the purpose of acquiring any omitted provisional remedy. That he could not have arrested the defendants by process issuing out of the Marine Court, does not affect the question. The plaintiffs' assignor elected the former, and waived the higher powers which he might have invoked. For these reasons I think the second point tenable.

Section 292 of the Code provides that no person shall, on examination pursuant to this chapter, be excused from answering any question on the ground that his examination will tend to convict him of the commission of *a fraud ;* but his answer shall not be used as evidence against him in any criminal proceedings or prosecution."

It was held in Mauran *v.* Lamb (7 *Cow.*, 174), that the real plaintiff, though not a party to the record, could not be required without his consent to give evidence for the defendant. The

rule in that case is said to have been changed by a subsequent statute, which provides that a witness shall not be excused from answering, on the ground that the answer may establish, or tend to establish, that he owes a debt, or is otherwise subject to a civil suit (2 *Rev. Stats.*, 4 *ed.*, 652 ; Cook *v.* Spaulding, 1 *Hill*, 586). Our statute is substantially the same as that of 46 George III., ch. 37, which was passed subsequent to the impeachment of Lord Melville, where the chancellor and eight of the judges, against four, were of opinion that at common law the witness was bound to answer, although it might subject him to a civil suit (1 *Hill*, 586 ; 1 *Greenl. Ev.*, 6 *ed.*, § 452). The defendant Hirsch, upon examination under section 292, was therefore not excused from answering any question which would subject him to a civil action, that section having protected him from prosecution criminally for any thing he might disclose. He was thus compelled by different statutes to answer, whether his answers subjected him to a civil or criminal proceeding ; but was saved from any criminal proceeding founded on the evidence which his testimony furnished. I think therefore that the section referred to does not exclude the use of the examination against the judgment debtor in actions against him, and that the order of arrest was properly predicated on it as part of the moving papers. I think also, for the reasons assigned, the third point cannot be sustained.

The defendant Hirsch states that within six months prior to his examination, which took place on February 2, 1857, he and his firm purchased about $60,000 or $70,000 worth of goods ;— that within four months prior to that day he and his firm shipped $70,000 or $80,000 worth of goods to California, and made the last shipment, amounting to $7,000 or $8,000, about a week or a fortnight before the 2d of February ;—that his firm stopped business about January 22, 1857, and made an assignment to Frederick Frank, of San Francisco, California, for the benefit of all their creditors, which included all of the property of the assignors, of every name and kind ;—that his partner, Levinger, left for the last named place on January 22, 1857, with the assignment ;— that his firm had on hand at the time they stopped business a stock of goods amounting to $1,200, which they, on the 22d or 23d of January, sold to Marx Fisher, in payment of a debt due to him for money borrowed from him by defendants' firm of

Hirsch & Co., and also that at the time of the assignment the firm did not know whether they were insolvent or not—did not know their exact position, but wished to protect their creditors in case they did not give an extension. Hirsch had no copy of the assignment, and none appears to have been produced.

The motion to discharge the order of arrest is made on the plaintiff's papers only, and of course no affidavit is presented explaining any of the circumstances developed on the examination, or denying any of the charges made. Whether the $1200 worth of stock was sold to Fisher before or after the assignment, does not distinctly appear on Hirsch's examination. It is alleged, however, in the affidavit of Black, one of the plaintiffs, and it is not denied, that the assignment was made on January 19, 1857, which was three or four days before the sale to Fisher.

From these dates and events it appears that the bulk of the property owned by the defendants was either in San Francisco, or in transit thither, at the time the assignment was made, and that although it was designed to cover all the property of the defendants, the stock on hand, amounting to $1200, was sold to Fisher by the defendant Hirsch, or by both the defendants, three or four days after the assignment was executed. It does not appear that the plaintiffs, or their assignor Humphrey, knew either of the assignment or the sale to Fisher prior to the commencement of the action in the Marine Court, nor does it appear that the sale to Fisher was in fact made when that action was commenced. The whole of the property assigned was not delivered to the assignee, nor held subject to his order, as we have seen, $1200 worth of it having been transferred by the defendants subsequent to the assignment. The assignment, it is true, had not been delivered, or the trust accepted by the assignee named, but having been executed, and the defendant Devinger having left to deliver it, any interference with the property conveyed by it must be regarded as a violation of its provisions. If this view be erroneous, then there was no assignment, and the shipments made taken in connection with the sale to Fisher; and the alleged ignorance of the financial condition of the defendants establish an intent to dispose of their property for the purpose of defrauding their creditors. The right of action existing in the plaintiffs, and there being no evidence to show that the sale to Fisher was known to the plaintiffs or their assignor, and

there being, as already suggested, no evidence that the sale to Fisher was made prior to the commencement of the action in the Marine Court, and the defendants having, at least in regard to the property sold to Fisher, disposed of the same with intent to defraud creditors, I think the order of arrest was properly granted, and should be retained.

I have examined section 292 in reference to its bearing on the question last considered, and think it affords no relief where the property has been disposed of prior to any judgment, which was the case here. The plaintiffs' case is strengthened by the defendants insisting that the assignment is valid, because, if so, the appropriation of the stock on hand was a fraud upon the creditors to whose demands it had been applied.

Motion to discharge order of arrest denied, with $10 costs.

---

## BLAISDELL a. RAYMOND.

*Supreme Court, First District; Special Term, June,* 1857.

LIBEL.—RULES OF PLEADING.—INNUENDOES.—ANSWER.

Strictly the only object of the innuendo in a complaint for defamation is to explain the application of the words employed in the offensive publication by connecting them with the extrinsic circumstances set forth in the complaint by way of inducement.

The rule of the former practice which required the plaintiff in an action for defamation to state by way of inducement any *extrinsic facts necessary to* support an innuendo, is still in force, except as to such facts as are requisite to show the application of the words to the plaintiff.

*It seems* that where in a complaint for libel there is a defect in an innuendo, properly so called—such as that it is not supported by the prefatory extrinsic facts, or that it enlarges the meaning of the words charged, or alters them, or substitutes other words in their place,—the proper remedy is by motion.

But where passages in a complaint for libel, although in the form of innuendoes, were obviously not intended as such by the pleader, but were inserted as an allegation of the import of the words charged, they should not be stricken out on motion, but the defendant should answer them as averments of issuable facts.

Motion to strike out portions of a complaint.