## PEEL *a.* ELLIOTT.

*Supreme Court, First District; Special Term, July,* 1858.

*Again, General Term, September,* 1858.

Parties.—Affidavit to obtain Arrest.—Causes of Action.

Where property is vested in an officer for the time being of a foreign government, and he is authorized to maintain an action therefor in his own name by the country he represents, he may maintain such action in this State.

On motion to vacate an order of arrest, on the ground of the insufficiency of the plaintiff's affidavit, it is no ground of objection to his affidavit that the facts are sworn to on information and belief, if the means of information are stated, and they are sufficient to make out a *prima facie* case until denied by the defendant.

On motion to vacate an order of arrest founded on the nature of the cause of action, if there is any ambiguity as to its nature, the determination must be governed by ascertaining, not what cause of action the plaintiff has intended to set forth, but rather what cause of action he must rely upon for a recovery.

A preliminary and *ex parte* proceeding—*e. g.*, a commission and inquisition taken by the British government against a defaulting officer, by which the debt is ascertained and made a matter of record, upon which a writ of extent may issue—does not merge the original cause of action, so as to preclude an action on the original debt, or an arrest in such action. A proceeding which could not be effectual to raise a new cause of action, does not operate to deprive the plaintiff of the circumstances under which the original cause of action arose.

Whether the provision of subdivision 2 of section 179 of the Code—authorizing an arrest of a person for embezzlement or misconduct in a public office—applies to the case of an officer of a foreign government—*Query?*

I. *July,* 1858.—Motion to vacate order of arrest, on the ground of the insufficiency of the plaintiff's affidavit.

The action was brought by the plaintiff, as her Britannic Majesty's principal secretary of state for the war department, against the defendant, who had been a military storekeeper under that government, and had come to this State from England ; and it sought to recover a large sum of money alleged to have been embezzled by him in his office. On the commencement of the action the defendant was arrested upon the affidavit of the plaintiff's attorney, setting forth his case.

The case presented substantially the following facts:—The defendant was, on and prior to the 20th day of May, 1858, her Britannic Majesty's principal military storekeeper at Weedon, England, and, as such, was charged with the disbursement and payment to the persons entitled thereto of various large sums of money, from time to time intrusted to him for that purpose by the war department, of which the plaintiff was principal secretary of state, and as such secretary, having or claiming the care and custody of the property of that department, and the right to prosecute in his own name any action or proceedings for or concerning the same. A portion of the moneys thus intrusted to the defendant he failed to disburse and pay over according to law, and appropriated them to his own use, under pretence of satisfying a claim which he alleged he had against the department for arrears of pay, fees, and perquisites, and which he claimed to have a legal right thus to satisfy. On the contrary, the plaintiff claimed that this amounted to an embezzlement and fraudulent misapplication of those funds by the defendant as a public officer, and a fraudulent conversion of the same to his own use. The defendant having left or absconded from England about the 20th of May, 1858, and come to this country, a paper, supposed in these proceedings to be a *writ of extent*, was sued out by her majesty in the Court of Exchequer, directed to certain commissioners therein named, to inquire, through a jury and witnesses, whether the defendant was indebted to her majesty for any sums received by him as such military storekeeper for her majesty's use and not paid over; and if so, in what sums, and duly to take an inquisition and return the same to the Court of Exchequer. By the same court the sheriff of Middlesex was commanded to summon the jury for such purpose. To this writ the return of the commissioners and the inquisition were annexed. By the latter it was found that the defendant, " James Sutton Elliott, late of Weedon, in the county of Northampton, principal military storekeeper in the war department in the said commission also named, is, on the day of taking this inquisition, justly and truly indebted to her majesty in the sum of £2223 3*d.*, for money received by the said James Sutton Elliott for her majesty's use, and which he the said James Sutton Elliott should have appropriated in payment of various sums due on her majesty's account, but which the said

James Sutton Elliott had neglected to do." These last facts, as to the aforesaid commission, the return and inquisition, appeared by an exemplified copy thereof, under the seal of the Court of Exchequer, and said papers were described in such exemplification as " a certain record remaining among the remembrances of our Court of Exchequer at Westminster, that is to say, among the records of Trinity Term, in the twenty-first year of the reign of Queen Victoria."

The affidavit on which the arrest was founded was made by the plaintiff's attorney, and, after stating the facts, contained the following statement as to the deponent's means of knowledge :

" That this deponent is now, and for two years last past and upwards hath acted as attorney and counsel for the aforesaid department in divers matters of business of the said department, and hath been and is in frequent communication with the said department thereon; and the foregoing statements are made by deponent on his information and belief, derived from instructions received by him, this deponent, from Charles M. Clode, solicitor, and R. H. Tomeau, assistant solicitor of the said department, and from an exemplified copy of the aforesaid inquisition, under the great seal of her said Britannic Majesty's said Court of Exchequer, received by him, this deponent, from the said H. R. Tomeau, in the course of his employment as aforesaid."

The defendant moved for an order vacating the arrest, on the ground of insufficiency in the plaintiff's affidavit.

*C. A. Seward,* for the motion.

Both parties are non-residents, and the court should scrutinize the plaintiff's case with great strictness. (Hyer *a.* Ayres, 2 *Ed.,* 222.)

I. His affidavit is fatally defective, in that it shows that not the plaintiff, but the queen, is the real party in interest. The defendant is not indebted to the plaintiff, and the latter cannot maintain an action, although he is the agent or servant of the government. (Republic of Mexico *a.* Arranjois, 11 *How. Pr. R.,* 4.)

II. The cause of action, for the embezzlement charged, was merged by the proceedings of *extent.* Any action must now be founded upon those proceedings, and in such action the

defendant is not liable to arrest. (Goodrich *a.* Dunbar, 17 *Barb.*, 647.)

III. The affidavit is entirely on information and belief, and therefore insufficient. (Campbell *a.* Bryan, 15 *How. Pr. R.*, 51.) Again: the first allegation of the affidavit (after stating the defendant's office, and that moneys were intrusted to him), is, that the defendant, "as such public officer, had fraudulently embezzled, misappropriated, and misapplied," &c. This is the exact language of subdivision 2 of section 179, and is a conclusion of law. The facts and circumstances whence this conclusion flows are not stated so that the court can be judicially informed that the applicant had a right to draw the legal conclusion. The second charge is, "that the defendant hath been guilty of misconduct and neglect in such his office." This is likewise a conclusion of law, and alleged in the exact language of subdivision 2. The time, the place, and the circumstances—in other words, the facts justifying the conclusions—are not stated. The third charge is, "and likewise of fraud in contracting the debt for which this action is brought." This is in the language of subdivision 4 of section 179 of the Code, without a single positive affirmation of fact constituting the alleged fraud. That this is not enough, is established by all the adjudications:

1. "It is not sufficient to state that the case is one of those mentioned in section 179; facts enough must be stated, so that the judge can see from them that it is such a case." (4 *How. Pr. R.*, 96; 2 *Code R.*, 53.) 2. "Swearing within the words of the statute is insufficient." (21 *Wend.*, 672; 9 *Barb.*, 446.) 3. "The affidavit is defective if it omits to state the facts and circumstances from which the plaintiff claims that the legal conclusions follow." (14 *Wend.*, 233.) 4. "Charging fraud generally is not sufficient, but the court must be advised in what the fraud consists." (6 *Hill*, 229.) 5. "The plaintiff must specify and establish the particular fraud as the foundation of the order." (12 *How. Pr. R.*, 199.) 6. An affidavit "that the affiant has been informed and believes that the defendant has been guilty of a fraud, is insufficient." (10 *Barb.*, 79.) 7. "An affidavit upon information and belief generally is clearly insufficient." (15 *How. Pr. R.*, 51.) 8. "If it is allowable to state any material facts upon information and belief, the nature, quality, and means of the information must be pointed out, so that

the judge may be able to form a belief," and that "the belief of the party cannot be substituted for that of the judge." (*Ib.;* 10 *Barb.*, 178.)

*J. T. Williams* and *H. Whittaker*, opposed.

INGRAHAM, J.—This action may be brought in the name of the plaintiff. The statutes of England vest the property in the officer, and give him authority to sue for it.

There is nothing in the decision of Judge Hoffman (11 *How. Pr. R.*, 1) which interferes with such a mode of sustaining the action. He says, " If the State sues without the individuality of a monarch, some public officer representing it must be upon the record." And again: " An ambassador may sustain an action on behalf of the sovereign."

Where the property is vested in the officer for the time being, and he is authorized to maintain an action therefor in his own name by the country he represents, I see no reason why he cannot sue in this country.

This action for the recovery of the money embezzled is not merged in the extent and proceedings thereon, nor affected thereby, so far as I have been able to obtain information in regard thereto. The one is an information for the government, the other a proceeding to obtain payment of the debt, not interfered with by the former.

The objection that the facts are sworn to on information and belief is not available on this motion. The means of information are stated, and they are sufficient to make out a *prima facie* case until denied by the defendant. Motion to discharge order of arrest is denied, without prejudice to a renewal of the motion on affidavit of the defendant.

II. *September*, 1858.—Appeal from an order denying a motion to vacate, founded on the defendant's affidavit.

. The defendant availed himself of the privilege granted by the order denying his first motion, and moved upon his affidavit, and the papers before used. His affidavit was met by counter-affidavits on the part of the plaintiff.

The complaint, which was not served until after the determination of the first motion to vacate the arrest, but was verified on the 10th of August, 1858, after setting out the title of the

plaintiff, and his right to sue for the cause of action therein set forth, alleged the appointment of the defendant in October, 1855, as a public officer in the war department, to wit, principal military storekeeper in the said war department at Weedon, and his continuance in said employment till about the 20th of May, 1858, when he absconded therefrom; that he was, as such storekeeper, intrusted with divers property of said department, and especially with divers large sums of money for payment to the persons entitled thereto, a portion of which he neglected so to pay or apply, and did, on or before the 20th day of May, 1858, fraudulently and wrongfully, and with misconduct and neglect of the duties of his said office, embezzle and misapply, and convert to his the said James Sutton Elliott's own use and purposes a large sum of money, part of such moneys so intrusted to him as aforesaid—to wit, the sum of £2223 3*d.*, currency of the said United Kingdom of Great Britain and Ireland, the same being of the value of $10,818.66 currency of the United States of America"—in fraud of the department, and in breach of his duties as such public officer, and fraudulently and wrongfully misconducted himself and absconded from the duties of his office without discharge therefrom, and without applying or accounting for said moneys, and that he had never since applied the same or accounted therefor.

The complaint then stated that, on such embezzlement and absconding, a writ of extent was duly issued, and an inquisition was also taken under such extent, in due form of law, whereby the defendant was found indebted (substantially as set forth on said inquisition), as appeared by an exemplification of the said extent and inquisition, under the great seal of the said Court of Exchequer, to which he craved leave to refer. It then sets forth that the defendant had never repaid, applied, or accounted for the said sum, but was indebted to the plaintiff therefor, with interest from the 12th day of June, 1858, the date of the said inquisition, and demanded judgment for that sum, with costs.

The defendant detailed in his affidavit the circumstances under which he became entitled, as he alleged, to the fees and perquisites, exceeding the amount of the plaintiff's claim, and which he applied in satisfaction thereof, and claimed the right to apply in this action, as a set-off or counter-claim thereto. The plaintiff's affidavits sufficiently substantiated the relation of

the parties, the deficit in the accounts, and the misappropriation of the moneys.

At special term an order was entered denying the motion, and the defendant appealed to the general term.

The only question argued upon the appeal was, whether this was properly an action for money received, or property embezzled or fraudulently misapplied—by a public officer in the course of his employment as such, or by a person acting in a fiduciary capacity—or for misconduct or neglect in office; or whether the original cause of action, assuming it to have been such as would have justified an order of arrest, had been waived, merged, or extinguished by the proceedings taken in England under the extent and inquisition.

*C. A. Seward* and *A. Oakey Hall*, for the appellant.

*T. Williams* and *H. Whittaker*, for the respondent.

By the Court.*—Hogeboom, J.—The question presented for the consideration of the court in this case is, whether the defendant ought to remain under arrest within the provisions of subdivision 2 of section 179 of the Code. That section authorizes the arrest of a party in an action for money received, or property embezzled or fraudulently misapplied by a public officer, or by a person in a fiduciary capacity, or for any misconduct or neglect in office. The question was argued wholly upon the effect of the judicial proceedings taken in England upon the case, and I do not therefore propose to discuss the question whether the defendant, for acts done in England amounting to fraud or official misconduct towards that government, can be held to arrest here as a public officer, or guilty of official misconduct; or whether our statute is limited in its operation to cases of misconduct occurring within its own jurisdiction, or towards its own government. The precise question to be disposed of, therefore, is, whether the legal proceedings which have taken place in England have essentially altered the original cause of action, and so deprived it of its original character or qualities, that in its present shape the action can no longer be said to be an action for money received, or property embezzled or fraudulently mis-

---

* Present, Davies, P. J., and Sutherland and Hogeboom, JJ.

applied by the defendant as a public officer, or for misconduct or neglect in office. This must be determined by ascertaining the legal characteristics of the cause of action on which the plaintiff must rely for a recovery in the form of action which he has adopted. I say the cause of action on which he must rely for a recovery, rather than the cause of action on which he has prosecuted, or which he has set forth in his complaint; for if all the facts as now developed show that he must rely upon the extent and inquisition, and that he cannot go back to the original official misconduct as the ground of recovery, then we must look at the extent and inquisition, and determine whether they have· so far altered, merged, or extinguished the original cause of action as to deprive it of those properties upon which the right to obtain an order of arrest is founded. We are driven, therefore, to investigate the character and effect of the proceedings in England in order to determine this motion. These proceedings are denominated in the complaint in this action a writ of extent and inquisition, but I think improperly so. They are merely the commission and inquisition which are resorted to in England as preliminary to, and the foundation of, the writ of extent and inquisition, which are subsequently issued and taken. So far as I have been able to gather or understand the practice in England upon the subject, it is this:

When the queen desires to recover a simple contract debt against a subject, she may proceed by action of debt, or by *scire facias*, or extent; but writs of *scire facias* or *extent* must be founded upon matter of record, and therefore, before proceedings can be taken to collect a simple contract debt, it must be *entered of record.* (2 *Tidd's Pr.*, 1092; Regina *a.* Ryle, 9 *Mees & W.*, 239.) To put the simple contract debt in this shape, a commission is issued out of the Court of Exchequer, directed to two commissioners, and always executed in Middlesex, to inquire as to the indebtedness and its amount, under which an inquisition is taken to find the debt. When thus taken, returned, and filed, it becomes matter of record, and a proper foundation upon which a *writ of extent* issues. It is precisely this, and no more, which has been done in the present case, according to the exemplified proceedings which are presented on this motion. No notice is given to the defendant of the execution of this commission—and none was given to the

Peel *a.* Elliott.

defendant in this case; and generally no evidence is given of the debt in these preliminary proceedings, except the affidavit of danger, which is made for the purpose of procuring the writ of *extent*, which is the next proceeding. (2 *Tidd's Pr.*, 1093.) This affidavit states the existence and origin of the debt, and that it is in danger of being lost in consequence of defendant's insolvency, bankruptcy, or absconding, or other act leading to a like conclusion; then a fiat issues for a writ of *extent*, signed by the chancellor of the exchequer or a baron, and upon this (after the preliminary inquisition is returned and filed) the writ of *extent* issues. This writ, when issued to collect a debt due to the queen (as it would be in the present case, if the proceedings were continued in England), is called an *extent in chief*. When issued, as it sometimes may be, in behalf of the crown debtor (though in the name of the king or queen) against his debtor, it is called an *extent in aid*, because its object is to aid in obtaining payment of the debt due the crown. This writ is directed to the sheriff, and commands him to enter same and take defendant, and to inquire, by a jury, what lands and tenements, goods and chattels, and debts, the defendant has (or had), and to appraise and extend the same, and take and seize them into the king's (or queen's) hands. (2 *Tidd's Pr.*, 1094; *Sewell on Sheriffs*, 264; *Watson's Sheriff*, 247.) Under this writ an inquisition is taken, in obedience to its injunctions; and on its execution all parties interested may appear and give evidence, and sometimes the court is applied to to require reasonable notice of its execution to be given, although no notice is given in ordinary cases. As yet, it will be observed, there is no command to sell the property seized. Therefore, on the return-day of the writ of extent, a rule is entered that, if no one appear and claim the property of the goods in a se'nnight, a writ of *venditioni exponas* shall issue to sell the same. (2 *Tidd*, 1115; *Sewell*, 281.) If there is no appearance, the property is sold under the last-named writ. If the defendant (or other parties interested in the property) appear, as he may do, he may oppose the proceedings, which is done, principally, in two ways: either by a motion to set aside the proceedings—if there are legal objections thereto—or by a traverse. On a traverse, the party enters his appearance and claim of property; then a rule to plead is entered, and the defendant puts in his pleas, which may contain

any matter of defence, and among others that the debt does not exist, or has been in some way paid or satisfied. To these pleas a replication (if necessary) is interposed, and on an issue being formed, the cause goes to trial in the ordinary way before a jury. (2 *Tidd*, 1124–1128.) A postea is made up, and a rule for judgment entered. In practice, except where the defendant wishes to bring a writ of error, a judgment is seldom entered up when the verdict is in favor of the crown, as the latter is already in possession of the property under the writ of extent; nor does an execution issue, the cause being left to take the same course as if no appearance or claim had been put in. If the defendant succeeds on the trial, he is restored to the property by a writ of *amoveas manus*. (2 *Tidd*, 1128, 1129.)

This brief recital of the English practice will help materially to illustrate this case. The proceedings in England, so far as they have taken place, are only preliminary in their character— entirely *ex parte*, and only resorted to as the foundation for a proceeding peculiar to England—at any rate, wholly unknown to us under our present system—to wit, the writ of extent. It is possible that in England an action of debt might lie in behalf of the crown upon the debt thus found by these preliminary proceedings, as it would lie upon the simple contract debt existing before the proceedings were initiated. I do not know whether this is so or not. But if it be so, I should have some doubt, if England had a statute like ours in regard to arrest, whether the character of the claim would be thereby so entirely metamorphosed as to forbid an arrest. I should think it certainly would not be, if the plaintiff had his election either to sue upon the original simple contract debt or the debt of record, which was the result of the preliminary proceedings. There would have occurred no satisfaction of the debt—no voluntary change, by the mutual consent of the parties, of the character of the debt— no particular equity for depriving the plaintiff of his original remedies—nothing, indeed, occurring but a proceeding which gave greater certainty, precision, and permanency to the debt. Still, if the plaintiff was restricted to his remedy upon the debt of record, it might well be said his cause of action was not the same as at first. In the first proceeding he would be obliged to proceed upon the original cause of action—the simple contract debt. In the other case he would be obliged to proceed upon

the record debt, and would neither be required nor allowed to go back to the original cause of action. But taking the facts of this case, I do not see how he could found an effectual or conclusive cause of action upon an *ex parte* proceeding. It is, as to the defendant, as if it had never taken place. I know of no transaction upon which a right of action against another can be founded, unless he has in some way become a party to it; or unless, in some legal proceeding, jurisdiction of his person had been obtained. Even, therefore, if the action had been prosecuted in England under a statute similar to ours, I think the plaintiff could not rely for a recovery upon what are (erroneously) called in this case the *extent* and *inquisition*, for the reason that the proceeding was wholly *ex parte*, and liable to a jurisdictional objection. He would be driven, therefore, to his original cause of action.

But in this State we have no writ of *extent*—no proceedings in any way analogous—and the plaintiff institutes the ordinary action to recover his debt. In his complaint it is very apparent that he sets forth all the facts, independent of the *extent* and inquisition, which he would have set forth if he had been suing upon the original cause of action alone. But he sets forth also the *extent* and inquisition—not, as on this motion he alleges, as the substantive cause of action, but as a fact in the history of the cause of action, giving at most precision and certainty to his claim, and furnishing a date from which to charge interest. On the other hand, the defendant claims that it is put forth as the real and substantial cause of action—the record, on which the plaintiff relies for a recovery—and that the other allegations are only by way of introduction or inducement. But it is clear to my mind that it is not a record in the ordinary sense of that term—that is, a matter conclusive upon the parties, incapable of contradiction and importing absolute verity. In a restricted sense it is a record, like a recorded mortgage or a recorded deed—that is, it is entered of record. But it has not even the force of a recorded deed or mortgage, for they purport to be the act and to bear the signature of the adverse party; whereas this is a wholly *ex parte* proceeding, and would have no more inherent force than a judgment decree or record, made up on the party's own motion, without notice to the adverse party, in a case where the practice of the court required the facts in the

complaint to be verified by a disinterested witness. I think such a proceeding, independent of a statute giving it efficacy, can have no such force by the principles of the common law, as a substantive cause of action, as would allow of its being declared on as such, or as having inherent vitality, independent of the aliment or support it derives from the original cause of action. If this be so, then the (so called) " *extent* and *inquisition*" amount to nothing as a cause of action; and if they are ineffectual for that purpose, they are also ineffectual to deprive the plaintiff of the benefit of the circumstances under which the original cause of action arose. In other words, the plaintiff has not, even if he originally attempted to do so, succeeded in so altering, merging, or extinguishing his original claim as to give it a new character or make it a new thing. The present action is still an action to recover money or property embezzled or fraudulently misapplied by a public officer, or for misconduct or neglect in office.

The result at which I have arrived upon this part of the case—contrary, I am free to say, to my original impressions—makes it unnecessary for me to examine the question whether, in case the plaintiff had succeeded in transforming his original claim into a *judgment*, he would thereby have forfeited the right to arrest the defendant, incident to his claim in its original character. Upon that subject the authorities, so far. as they have gone, are conflicting. Justice Mitchell, of the Supreme Court (in Goodrich *a.* Dunbar, 17 *Barb.*, 644), maintains the affirmative of this proposition; while Justice Woodruff, of the Superior Court (in Wanzer *a.* De Baum, 1 *E. D. Smith's C. P. R.*, 261), as strenuously upholds the negative. I do not think the present case calls for a decision of that question.

I am, therefore, of opinion that the defendant is not entitled to be discharged from arrest upon the ground argued before us on the appeal, and that the order of the special term should be affirmed, with costs.